ZOLLIKOFFER, appellant, v. HAVEMEYER.

*Contract for public work — awarding of — what is not variation of proposal. Waste of public property by official — action for, under Laws 1872, chap. 161.*

The authorities of a city advertised for bids for lighting the city by gas. The bids were to be examined and the contract awarded December 31, and the lighting was to commence that night. A company, whose pipes were laid through certain streets of a district, but not connected with the street lamps, accompanied their bid with this condition, " provided sufficient time is given this company to make the necessary connection." Another company, with whose pipes the lamps were connected, bid $37 and $39 per lamp. By an understanding between this company and other companies, those companies did not bid. The first-named company bid $35 per lamp, and its bid was accepted. Afterward, new proposals were issued for lighting streets, not reached by the pipes of this company, and bids were received and a contract made for lighting those streets at $33 per lamp with the other competing company.

*Held*, (1) that the proposal of the company whose bid was accepted was not irregular because of the proviso; and (2) that the fact of the subsequent bid and contract, at a lower rate, was not a demonstration that the whole district could be lighted at that rate, so as to render the public officers awarding the contract upon the first proposals at a higher rate, liable to action, for waste of the municipal property, under Laws 1872, chap. 161.

APPEAL from an order made at special term denying a motion for an injunction, to restrain the mayor, comptroller and commissioners of public works of the city of New York, from executing a contract with the New York Mutual Gas-light Company, for lighting certain of the streets of said city. The action was brought by Oscar

Zollikoffer against William F. Havemeyer, mayor of said city, and others, under the provisions of Laws 1872, chap. 161. The necessary facts fully appear in the opinion.

*Beardslee & Cole* and *Aug. F. Smith,* for appellant.

*George P. Andrews,* for the city.

*William N. Armstrong,* for New York Mutual Gas-light Company.

BRADY, J.   The plaintiff, as a tax payer, commenced this action under and by virtue of the act of 1872, chap. 161, which provides, that "all officers, agents, commissioners, and other persons acting for and on behalf of any county, town, or municipal corporation in this State, and each and every of them may be prosecuted, and an action maintained against them, to prevent waste or injury to any property, funds, or estate of such county, town, or municipal corporation, by any person residing in such county, town, or municipal corporation, assessed for and liable to pay taxes therein, or who has paid taxes therein within one year previous to the commencement of any such action or actions."

The facts and circumstances which prompted it are as follows: The defendants, Havemeyer, Green and Van Nort, under the provisions of section 73, chapter 335 of the Laws of 1873, advertised for proposals for lighting the city with gas.   That section authorizes the commissioner of public works, in conjunction with the mayor and comptroller, to contract for lighting the streets, avenues and places with gas, containing a prohibition, however, against any arrangement or agreement with any company or companies for such purpose for a period longer than a year at any one time, or for an amount in excess of the sum appropriated therefor.   In answer to a proper advertisement proposals were received from the several gas companies of the city, which, with the exception of the New York Mutual Gas-light Company by agreement between themselves were bound not to lay pipes or furnish gas in any part of the city except that allotted to it under the terms of such agreement.   The New York Mutual Gas-light Company was awarded a contract for lighting the lamps in streets which were within the area allotted to the Metropolitan Gas Company, of which the plaintiff is, and for

several years has been, the president. Proposals were made by that company for the streets covered by the contract mentioned, but were rejected for irregularities in the bids. Their proposal was $37 per lamp per annum, provided the contract was awarded for all the public lamps in their district, and $39 per annum for each lamp if the contract was only for a portion of the public lamps in that district.

It must be borne in mind that by the operation and effect of the mutual agreement and consequent allotment of districts, the companies concerned could not compete with each other, and that the only competitor, as a result of that arrangement, was the New York Mutual Company, who was not confined to any district or bound by any allotment. The proposal of the Mutual Company was $35 per lamp per annum where its mains had been laid, but inasmuch as they were not laid entirely in districts covered by the Harlem and Metropolitan Companies it became necessary to readvertise for proposals as to that part of the city and within the districts of the Harlem and Metropolitan, respectively, for which a contract could not be awarded to the Mutual, its mains not having been laid therein. The subsequent bid of the Metropolitan was $33 per lamp per annum, but that of the Harlem the same as before, namely, $39 per lamp per annum, and there being no competition, no lower bidders, the proposals were necessarily accepted, being regular in form.

The Mutual Company had not, however, up to the 1st of January, 1874, and consequently not at the time of its bid, made the necessary connections between its main pipes and the city lamps, and therefore their proposals were accompanied by a letter from its president saying, on behalf of his company, that under a strict construction of the first clause of the proposal it was physically impossible (as the proposals were to be opened at noon and the performance of the contract to commence on the same night) for any company other than those who were then furnishing the gas, to bid successfully, and asking therefore the interpolation of the following sentence: "provided sufficient time is given this company to make the necessary connection," the object being to enable them to establish the necessary connection between the main pipes and the lamps which they had not then accomplished as already stated. This statement of facts and circumstances is sufficient to make the objections urged intelligible. These objections are:

1st. That the proposal was irregular because of the proviso recited; and

2d. That the subsequent bid for $33 per lamp per annum made by the Metropolitan upon the readvertisement, demonstrates that the whole district could have been lighted for $33 per lamp per annum, involving a saving to the city of the difference between that sum and the amount per lamp which was to be paid to the Mutual Company for the light to be furnished by them. The question presented is the value of these objections, either or both.

The ordinances of the common council in reference to the manner in which contracts shall be made by the persons to whom the duty is assigned contain many provisions, some of which are matters of form and not of substance. They relate to the box called the "estimate box" in which the bids are to be placed and provide for an opening in the top of the box, keeping the box locked except at such times as it may be necessary to open it for the purpose of examining the bids, and that the key must be retained by the head of the department, etc. It is also declared by them that all bids which are not made in conformity to the ordinances shall be rejected, etc. Rev. Ord. 187–201. The object of these ordinances, so far as they relate to the box and its privacy, is to prevent the bidder from ascertaining what his competitors, if any, have done, and thus compel him to make his proposal independently of all others. The object of the declaration that all bids which do not conform to the ordinances shall be rejected, does not mean a literal but substantial compliance with the requirements. It does not mean mere matters of form but of substance, unless the matters of form are so blended with those of substance that they cannot be separated. It will be perceived that the proviso objected to is not a defect in form or substance in regard to the ordinances. It was the addition of something which in no way affected the service to be rendered, but the time only when such service was to begin. It was not founded upon any fancied advantage to be derived from its interpolation, but for the purpose of enabling the contracting parties to do what was indispensably necessary to enable them to perform the contract which they were willing to make. If it was a departure from the strict literal terms of the advertisement and the ordinances, which is doubtful, it was not from the spirit of either ; the sole purpose and object of which was to obtain, for the city, from responsible persons, a contract upon the best possible terms. It

did not limit the obligations of the company other than to give them a reasonable· time to prepare, and that reasonable time has since been shown to be fourteen days, in which period they could accomplish all that was necessary.

The statute authorizes an action to prevent waste or injury to any property, funds or estate of the corporation. In what respect does the interpolation of the proviso bring this case within its provisions ? What waste or injury in any respect would result from it ? In order to consider these questions, it is necessary to understand the circumstances existing when the proposals were opened.

The Metropolitan Company had bid $37 conditionally per lamp as their lowest price, and the Mutual Company $35 per lamp. There were no other competitors and could not be, for the other companies were bound to abstain from bidding. The object of such an understanding is readily understood. The defendants intrusted with the power of awarding the contract saw at once that there would be a saving of from two to four dollars per lamp for each lamp embraced in the contract given to the Mutual Company, and as to the balance of the lamps in the district, they would be compelled to accept from the Metropolitan Company the bid they might make on a re-advertisement. The compulsion would arise from the combination for allotment which had been carried out by agreement between the companies other than the Mutual, as already stated. The defendants named were not required to speculate upon the probability of a bid from the Metropolitan Company more favorable than that which they had already made. The Metropolitan Company had declared that if any part of their district was given to another company, their price would be $39 per lamp, and $37 per lamp if their contract embraced it all. The obstacle in the way of making the better contract at the time was the proviso by which sufficient time was to be given the Mutual Company to make the necessary connection. Its adoption could in no way operate injuriously to the city or its interests. The Mutual Company could make no charge until the gas was furnished, and the delay would have been only fourteen days. It would be a very erroneous construction of the ordinances or of the effect of the proviso in the proposals, to hold that the facts and circumstances, considered, established a case within the statute of 1872. There is no pretense of collusion, fraud or bad faith. There is no pretense of evil design or willful departure from prescribed duties, and there is no evidence

Zollikoffer v. Havemeyer.

from which the conclusion should be drawn that any other than a proper consideration of the public interests influenced the defendants mentioned in awarding the contract to the Mutual Company. There is no pretense that that company had any sinister designs or that they were influenced in making the bid, with its proviso, with any other than a fair spirit of competition alike of advantage to them and the corporation. What they asked was a necessity, but it was not to the prejudice of the people, but with the then existing facts of which mention has been made, was for the benefit of the city.

It may indeed be claimed that to have rejected the proposal would have been to place the whole subject under the control of the Metropolitan Company by rejecting all competition. It must also be said that the difference between the proposals to be made in their literal sense and those in fact made is too unimportant to warrant the restraint sought to be imposed. The abuse should be substantial, if not designed. It is neither. The objection to the proviso is technical, perhaps. It may be so regarded in the absence of all suggestions of evil intended or resulting from its acceptance. It is clear, however, that its adoption was justified by existing facts and circumstances, in the consideration of which it is important to bear in mind the competitors and the covenants that bound them to assist and not to interfere with each other.

In the view thus expressed of this controversy it is apparent that the second proposal of the Metropolitan Company of $33 per lamp is not to be employed to the prejudice of the defendants or either of them. It was a subsequent transaction, and one which they were not nor was either of them bound to anticipate. Whatever rights were enjoyed or obligations imposed at the time the proposal of the Mutual Company was accepted are to be invoked and no other, in determining the propriety of sustaining this action. None of these warrant our interference, and we think the order appealed from should be affirmed.

*Order affirmed.*